IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RAMON J. COSTA et al.,
for themselves and on behalf of all
similarly situated individuals,
    Plaintiffs,

v.                                                           Civil Case No. 3:14-cv-00731-JAG

FAMILY DOLLAR STORES OF
VIRGINIA, INC., FAMILY DOLLAR
STORES, INC., and FAMILY DOLLAR, INC.,
    Defendants.

## OPINION

Family Dollar[1] either terminated or did not hire each of the three named plaintiffs based on the results of a background check. The plaintiffs contend that Family Dollar has violated the Fair Credit Reporting Act ("FCRA") by taking adverse action against job applicants before providing FCRA-required notice. The plaintiffs stake their claim on the assertion that the act of assigning an internal code to an applicant qualifies as an adverse action under the FCRA. The internal coding, however, does not amount to an adverse action against an applicant. Rather, it is simply one step in a process, and it may, in certain circumstances, trigger an FCRA notice. Even if the coding did amount to an FCRA violation, however, Family Dollar did not act willfully, precluding any relief in this case. Thus, the Court grants Family Dollar's motion for summary judgment.

---

[1] The plaintiffs sued Family Dollar Stores of Virginia, Inc., Family Dollar Stores, Inc., and Family Dollar, Inc. The Court refers to these entities collectively as Family Dollar.

# I. BACKGROUND[2]

## *A. Family Dollar's Background Check Process*

As part of its hiring process, Family Dollar depends on job applicants' background checks. Throughout the background check process, Family Dollar uses the services of First Advantage Background Services, Corp. ("First Advantage"). Once a job applicant agrees to a background check, First Advantage, on behalf of Family Dollar, performs an investigation, compares the results with Family Dollar's stated hiring criteria,[3] and assigns a code to the applicant. The possible codes are (1) recommended, (2) decisional, or (3) not recommended. The applicants coded as recommended continue in the hiring process. The applicants coded as decisional go to Family Dollar's Background Check Committee (the "Committee") for review.

To those applicants coded as not recommended, First Advantage sends a packet of information (the "First Letter Packet"). The First Letter Packet consists of three things: 1) a letter informing the applicant that the background check "may adversely affect your employment status," 2) a copy of the applicant's background check, and 3) a description of the applicant's rights under the FCRA. (Halstead Am. Decl. Ex. A.) If the applicant does not lodge a dispute in response to the First Letter Packet, First Advantage—after at least five business days have passed since it sent the First Letter Packet—sends a second letter informing the applicant that

---

[2] The parties bicker over labeling and construing of facts in this case, but do not dispute the material facts. The plaintiffs, however, do move to strike the declarations from which many of the facts come for lack of personal knowledge, failure to establish a foundation, and inclusion of inadmissible hearsay. The Court finds the declarations acceptable, so denies the plaintiffs' motions to strike. Thus, the Court will consider the challenged declarations, except to the extent that they review the exemplar files of putative class members. *See infra* note 4.

[3] "These guidelines set forth categories of behavior, such as criminal convictions, and how an applicant's prior conduct could affect the applicant's potential employment with Family Dollar." (Halstead Am. Decl. ¶ 13.) In other words, Family Dollar tells First Advantage which code to assign each applicant based on the prior conduct revealed on the background check. For any applicant whose prior conduct does not fit cleanly within the guidelines, First Advantage itself assigns the decisional code.

2

"[Family Dollar] will not be able to offer or continue [the applicant's] employment at this time" (the "Second Letter"). (Halstead Am. Decl. Ex. B.) If, however, the applicant lodges a dispute with Family Dollar, the Committee conducts a review of the job application and the disputed background check. In 35% of dispute cases sampled, after review, the Committee changed the applicants' codes from not recommended to recommended[4]

### B. The Individual Defendants

Three plaintiffs—Ramon J. Costa, Teresa Sanders, and Eric J. Duncan—have sued Family Dollar on behalf of themselves and all other similarly situated individuals.[5] Costa applied for a job with Family Dollar on March 20, 2013. On March 22, 2013, Family Dollar offered him a job contingent on successfully completing a background check, and Costa started that day. After reviewing Costa's background check, on April 1, 2013, First Advantage coded Costa as not recommended and sent the First Letter Packet. Costa did not file a dispute with either Family Dollar or First Advantage, so First Advantage sent the Second Letter on April 8, 2013. Costa denied receiving the Second Letter. Costa continued to work at Family Dollar until August 7, 2013, when Family Dollar fired him.

---

[4] The plaintiffs move to exclude the evidence from which Family Dollar pulls this statistic. The evidence includes a spreadsheet listing the results of dispute cases between 2010 and 2015, (O'Connor Am. Decl. Ex. D), and documents from certain exemplar files of putative class members, (Alcala Dec. 8, 2015 Decl. ¶¶ 9–24, Exs. A–M). For the reasons stated from the bench at the April 13, 2016 motions hearing, the Court will consider the spreadsheet, but will exclude the exemplar files. To the extent the plaintiffs seek to exclude any other evidence through their motion to exclude pursuant to Rule 37(c), the Court denies the motion.

[5] In their opposition to Family Dollar's motion for summary judgment, a footnote indicates, "Costa and Duncan do not oppose Summary Judgment and are moving to dismiss their claims." (Pls.' Opp'n to Family Dollar's Mot. Summ. J. 1 n.1.) Despite this promise, neither has filed a motion for voluntary dismissal. The Court, therefore, considers Family Dollar's motion for summary judgment as to all three of the plaintiffs.

3

Duncan applied for and received a job offer with Family Dollar on August 3, 2012, and he began work on August 5, 2012. After reviewing Duncan's background check, on August 4, 2012, First Advantage coded Duncan as not recommended and sent the First Letter Packet. Duncan did not file a dispute with either Family Dollar or First Advantage in response to the First Letter, so First Advantage sent the Second Letter on August 13, 2012. Duncan continued working for Family Dollar until Family Dollar fired him on August 17, 2012. Duncan says he received the Second Letter a couple of days after his termination.

Finally, Sanders applied for a job with Family Dollar on January 10, 2013. After reviewing Sanders's background check, on January 11, 2013, First Advantage coded Sanders as not recommended and sent the First Letter Packet. Sanders did not file a dispute with either Family Dollar or First Advantage in response to the First Letter, so First Advantage sent the Second Letter on January 18, 2013. Sanders says she did not receive the Second Letter until discovery in this case.

## II. DISCUSSION[6]

The FCRA establishes civil liability for actual and statutory damages for noncompliance with the notice requirement at issue here. When a consumer does not sustain any actual damages, he can still recover statutory damages, but only for a willful violation. Here, the

---

[6] The Federal Rules of Civil Procedure allow parties to move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a). The familiar principles governing summary judgment allow the court to grant it if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S 317, 322 (1986). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

4

plaintiffs do not seek actual damages. In order to prevail, therefore, they must prove a willful violation of the statute.

### A. Section 1681b(b)(3)(A)

The plaintiffs in this case bring their claim under § 1681b(b)(3)(A) of the FCRA. Section 1681b(b) sets conditions for furnishing and using consumer reports for employment purposes. Subsection (b)(3)(A) reads in relevant part:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3)(A).[7] In other words, an employer's formation of intent to take adverse action based on a consumer report triggers § 1681b(b)(3)(A), which then requires notice to the consumer before the employer actually takes such adverse action. This requirement does not prohibit an employer from taking adverse action based on a consumer report, but simply slows down the process to allow consumers to dispute or discuss potentially harmful information. *See Williams v. First Advantage LNS Screening Solutions, Inc.*, __ F. Supp. 3d __, No. 1:13cv222-MW/GRJ, 2015 WL 9692872, at *10 (N.D. Fla. Oct. 14, 2015).

The FCRA defines adverse action in the employment context as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).[8] In other words, an adverse action occurs when the

---

[7] This subsection includes an exception not applicable in this case.

[8] In addition to providing this definition of "adverse action" in the employment context, the FCRA's definition of "adverse action" includes a definition in two other specific contexts and a broad catch-all definition. *See* 15 U.S.C. § 1681a(k)(1)(B)(iv). The Court follows the lead of

adverse employment decision affects the applicant or employee. *See id.*; *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 391–92 (S.D.N.Y. 2001). In this case, the adverse action against Costa and Duncan occurred when Family Dollar fired them, and against Sanders when she received the Second Letter, *see Beverly v. Wal-Mart Stores, Inc.*, No. 3:07cv469, 2008 WL 149032, at *3 (E.D. Va. Jan. 11, 2008). Family Dollar sent the required § 1681b(b)(3)(A) notice (i.e., the First Letter Packet) before taking these actions and, consequently, did not violate the FCRA.

The plaintiffs argue that the adverse action in Family Dollar's process actually occurs when First Advantage assigns them the "not recommended" code based on Family Dollar's guidelines. The plaintiffs reason that no one at Family Dollar takes any other affirmative action against a job applicant after the not recommended code generates the First Letter Packet unless the applicant files a dispute. This argument misses the mark. After First Advantage assigns the not recommended code that generates the First Letter Packet, Family Dollar *does* take the action of generating the Second Letter to job applicants who do not file a dispute, denying the application.[9] It matters not that Family Dollar computer-generates parts of its process, nor that it outsources parts of its process to First Advantage. Family Dollar made the decisions on the criteria for employment, on the appropriate codes to assign, and on how to set up the computer-

---

other courts that look only to the employment-specific definition. *See, e.g., Javid v. SOS Int'l, Ltd.*, No. 1:12cv1218, 2013 WL 2286046, at *4 (E.D. Va. 2013). *But see Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 541–42 (E.D. Pa. 2012).

[9] In support of their argument, the plaintiffs note that the Family Dollar computer system, Taleo, reflects the not recommended code immediately after First Advantage assigns the code—so before First Advantage generates the Second Letter—for local store managers to see. The plaintiffs offer no evidence, however, that local store managers took adverse action against the plaintiffs after seeing the not recommended code in Taleo between the time First Advantages generated the First Letter Packet and the Second Letter. In fact, the store managers allowed both Costa and Duncan to continue working, despite the fact that a look in Taleo would show a code of not recommended.

6

generated letters, and Family Dollar affirmatively delegated some of the process to First Advantage as its agent. Thus, Family Dollar does take action after the assignment of the not recommended code by generating the Second Letter; the Second Letter is the adverse action. This, of course, is to say nothing of the fact that the plaintiffs' argument clearly fails as to Costa and Duncan, as both continued working after the not recommended code assignment until someone at Family Dollar fired them in their local store.

More fundamentally, the plaintiffs' argument fails because the act of coding an applicant as not recommended during Family Dollar's process is the formation of intent to take adverse action—the action that triggers the § 1681b(b)(3)(A) notice requirement—not the adverse action itself.[10] Further, the act of coding is an internal decision from which the applicant does not suffer any adverse effect. *See Williams*, 2015 WL 9692872, at *8–9; *Javid v. SOS Int'l, Ltd.*, No. 1:12cv1218, 2013 WL 2286046, at *4 (E.D. Va. 2013); *Obabueki*, 145 F. Supp. 2d at 392. The adverse effect does not come until Family Dollar denies the application through the Second Letter, as in Sanders's case, or fires the employee, as in Costa's and Duncan's cases. As Judge Schwartz aptly illustrated in *Obabueki v. IBM*, "[h]olding that an employee may suffer an adverse action as a result of an internal decision by the employer is akin to finding that a party's summary judgment motion is denied before the Opinion is composed and issued, following discussions between the judge and his law clerk." *Id.*

Other district courts have disagreed with this conclusion, albeit mostly at the motion to dismiss phase. *See Moore v. Rite Aid Headquarters Corp.*, No. 13-1515, 2015 WL 3444227, at

---

[10] A glance at the purpose of § 1681b(b)(3)(A)'s notice requirement supports this reasoning. Section 1681b(b)(3)(A) slows down the employment decision to give the *potential applicant* time to dispute the consumer report. Without any additional information from the applicant through a dispute, why should Family Dollar waste time reviewing the applicant's application a second time? Section 1681b(b)(3)(A) certainly does not require employers to take such a "second look," it only requires notice before an employer acts on its intent to take adverse action.

7

*5 (E.D. Pa. May 29, 2015); *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 539 (E.D. Pa. 2012). Most notably, this Court recently came to a different conclusion in *Manuel v. Wells Fargo Bank, N.A.*, a case where the employer, Wells Fargo, followed a similar background check process. 123 F. Supp. 3d 810 (E.D. Va. 2015). In denying Wells Fargo's motion for summary judgment, the Court held that "[w]hether or not a reasonable jury could determine that Wells Fargo's act of coding an applicant as ineligible was an adverse action under the FCRA is a fact question." *Id.* at 822–23. Nothing in the record here creates any such jury question. The facts are not at issue, only the legal effects of the facts. And in this case, the act of coding an applicant as not recommended is not adverse action under the FCRA as a matter of law.

### B. Willfulness

Even if Family Dollar's background check process violates § 1681b(b)(3)(A), any violation was not willful. In *Safeco Insurance Company v. Burr*, the Supreme Court held that willful violations of the FCRA include not only knowing and intentional violations, but also reckless violations. 551 U.S. 47, 52 (2007). A company recklessly violates the FCRA when its interpretation of the language is "objectively unreasonable," raising an "unjustifiably high risk" of a statutory violation. *Id.* at 69–70. Three factors, taken together, "illuminate whether the company conducted itself in an objectively reasonable manner." *Dreher v. Experian Info. Solutions, Inc.*, 71 F. Supp. 3d 572, 579 (E.D. Va. 2014).

> First, a court considers whether the Act provides clear guidance as to the meaning of particular statutory language or instead contains less-than-pellucid statutory text. Second, a court considers whether the defendant's proposed interpretation had a foundation in the statutory text. Third, a court asks whether the defendant was interpreting the statute in the absence of any contrary authority on the meaning of the statutory language in question because no court of appeals had spoken on the issue, and no authoritative guidance

> has yet come from the [Federal Trade Commission ("FTC")]. Judicial or agency silence can be persuasive as to the reasonableness of the adoption of that interpretation, but it is not dispositive.

*Id.* (internal citations and quotation marks omitted).

Applying these factors in this case, Family Dollar's interpretation of § 1681b(b)(3)(A), as implemented through its background check process, has a foundation in the statutory text based on relatively clear statutory language. *See supra* Part II.A. The FTC has not spoken directly on the issue, although it has recognized the need for a company to form intent to take adverse action and the option of delegating § 1681b(b)(3)(A) responsibilities to a third-party consumer reporting agency. F.T.C. Advisory Opinion to Rosen (06-09-98), *available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98. Further, no court of appeals has spoken on the issue. Of the district courts who have reached the issue, decisions have both supported, *see, e.g.*, *Williams*, 2015 WL 9692872, at *8–9; *Javid*, 2013 WL 2286046, at *4; *Obabueki*, 145 F. Supp. 2d at 392, and weakened, *see, e.g.*, *Manuel*, 123 F. Supp. 3d at 822–23; *Moore*, 2015 WL 3444227, at *5; *Goode*, 848 F. Supp. 2d at 539, Family Dollar's interpretation. And in fact, one of the district court decisions that rejected Family Dollar's interpretation held that the alleged violation of § 1681b(b)(3)(A), while sufficient to state a claim, was not willful. *Id.* at 543. Accordingly, Family Dollar's interpretation of § 1681b(b)(3)(A) is objectively reasonable and, therefore, not a willful violation of the FCRA. This precludes any relief to the plaintiffs.

### III. <u>CONCLUSION</u>

For these reasons, the Court GRANTS Family Dollar's motion for summary judgment. As none of the plaintiffs survives summary judgment, the Court DENIES the plaintiffs' motion for class certification as MOOT.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Order to all counsel of record.

Date: July 19, 2016
Richmond, Va.

/s/
John A. Gibney, Jr.
United States District Judge

10